## CIRCUIT COURT OF NOTTOWAY COUNTY

In re Elizabeth W. Kuitems

October 27, 1986

By JUDGE OLIVER A. POLLARD, JR.

The Court has under consideration motions to have Elizabeth K. Schaubach removed as guardian of the property of Elizabeth W. Kuitems and replaced by Johannes F. Kuitems, as guardian of her person and property.

Elizabeth W. Kuitems resided with her husband, Johannes F. Kuitems, in Newport News, Virginia, until November of 1984 when because of advanced age she was taken to Heritage Hall in Blackstone, Virginia. The present guardian, Elizabeth K. Schaubach, is a daughter of Mr. and Mrs. Kuitems and lives in Crewe, Virginia, close to Heritage Hall. Mr. Kuitems remained in Newport News until he moved to Clay Rest Home on April 12, 1985. Clay Rest Home is located on the property adjoining Heritage Hall, and Mr. Kuitems, who is 86, was able to visit his wife, who is 89, once or twice a day. Mrs. Schaubach visited both of her parents daily and took Mr. Kuitems to her home every Saturday. There was no apparent disagreement or conflict between Mr. Kuitems, Mrs. Schaubach or the other two daughters, Mary K. Webb and Annie K. Sturchen.

On August 26, 1985, Mary K. Webb took her father to her home in Palmyra, Virginia. Elizabeth Schaubach was not told in advance of this change. Mr. Kuitems testified he was lonesome at Clay Rest Home, did not get enough to eat, and was upset with Elizabeth Schaubach because she wanted him to change his will, and that he did so under pressure. On cross, Mr. Kuitems conceded that the will divided everything equally between the three daughters. Mr. Kuitems also stated he could not have a dog at the rest home but he had one now in Palmyra, which is his only companion. Employees of both Clay and Heritage

testified that Mr. Kuitems seemed content with no signs of dissatisfaction.

Mr. Kuitems visited his wife but once between November 11, 1984, and April 12, 1985; once at the rest home, Elizabeth Schaubach took him daily to see Mrs. Kuitems. Now that he is in Palmyra it is one and one-half to two hour trip to visit his wife. Mary Webb has brought him to Heritage Hall once every six weeks or so since August of 1985. He wants her moved to Charlottesville, about forty minutes drive from Palmyra, where he can see her two or three times a week. Mr. Kuitems says his wife will sometimes recognize him and will throw up her hands and kiss him. Several employees of Heritage Hall testified that Mrs. Kuitems recognizes Elizabeth Schaubach as a person who is there every day and gets excited whenever Mrs. Schaubach comes to visit. The quality of the visits in terms of benefit to Mrs. Kuitems appears to be about the same as between those of Elizabeth Schaubach and Mr. Kuitems.

As Elizabeth Schaubach would keep Mrs. Kuitems at Heritage Hall and Mr. Kuitems and Mary Webb would move her to Charlottesville, the threshold question is, where would Mrs. Kuitems be better situated? At present, she has a daughter minutes away from her side, if needed, and who has demonstrated her devotion and interest by seeing her at least once a day since November of 1984. The alternative is the promised two to three days a week visit by Mr. Kuitems and Mrs. Webb. It is noted that counsel for Mr. Kuitems mentions in his memorandum probable visits to Charlottesville of three or four days a week. My notes, however, reflect that both Mr. Kuitems and Mrs. Webb indicated two to three trips a week to Charlottesville. Mr. Michie argues that the Court is being asked, by Mrs. Schaubach, to "sanction the separation of this couple involuntarily." It is important to note that Mr. Kuitems voluntarily left the retirement home and moved away from his wife, and the daily visits to Heritage Hall. More importantly, there is no place in Palmyra for Mrs. Kuitems. If guardianship were changed she would be moved to Charlottesville, some distance away from Palmyra.

When first taken to Heritage Hall, Mrs. Kuitems was "frightened and scared." She has now been settled for some twenty-three months. It is evident that Mrs. Kui-

tems's interest would be substantially better served by allowing her to remain at Heritage Hall in familiar surroundings. To assure this, I feel I must appoint Elizabeth Schaubach as guardian of the person of Mrs. Kuitems. I reach this conclusion notwithstanding my concern for Mr. Kuitems and the knowledge that he wants to be near to his wife.

The income and assets of Mrs. Kuitems amount to her social security check and her clothing. All but approximately $30.00 of each monthly social security check goes to Heritage Hall, supplementing the portion of the bill paid by Medicaid. Both daughters, Elizabeth Schaubach and Mary Webb, have been involved in matters, that if not improper, cast suspicion and doubt on their intentions and reliability. Mr. Kuitems, on the other hand, at age 85 and legally blind, is really not in a position to act as guardian of his wife's property. Under the circumstances the Court is of the opinion, for lack of a better situation, that Elizabeth Schaubach should continue also as guardian of the property of Mrs. Kuitems.

I will ask Mr. Edmunds, as attorney for the party substantially prevailing, to prepare the appropriate decree continuing Elizabeth Schaubach as guardian of the property of Elizabeth Kuitems, and also appointing her guardian of the person of Mrs. Kuitems. Before such an order is circulated and submitted, I would suggest that Elizabeth Schaubach withdraw the proceeds of the refund check and deposit same in an escrow account pending the determination of all pending litigation.